FRANK ROSENTHAL, Appellant, *v.* THE MAGAZINE REPEATING RAZOR COMPANY and Others, Respondents.

First Department, December 5, 1930.

*Stephen Brooks-Rosenthal*, for the appellant.

*Joseph Larocque* of counsel [*William H. Crawford* with him on the brief; *Choate, Larocque & Mitchell*, attorneys], for the respondents.

O'MALLEY, J. The question presented is whether the plaintiff has made out a sufficient case for an order directing certain of the defendants to state by way of affidavit whether the original of a particular document is in their possession, power, custody or control; and, if not, when they parted with the same and what

has become thereof. (Civ. Prac. Act, § 328.) The document is a so-called syndicate agreement, described as Exhibit 2 for identification on an examination before trial.

The action seeks to recover money damages for fraud and deceit pursuant to an alleged conspiracy. The complaint alleges that by virtue of an assignment from the defendant Schick, the plaintiff was the owner of a one-half interest in the right to sell, manufacture and lease certain devices known as a magazine safety razor and a magazine lead pencil; that he was further entitled to a one-half interest in and to any letters patent that might be issued thereon and a one-half interest in any *and all* profits which might be received by Schick out of said devices; that without the knowledge or consent of the plaintiff, Schick entered into an agreement with the other individual defendants to organize a corporation to take over the letters patent which had been issued on the magazine safety razor and to manufacture or to procure the manufacture and sale of said razor in accordance with the letters patent; that pursuant to this agreement the defendant corporation was organized and thereafter Schick, without the knowledge or consent of plaintiff and pursuant to the agreement, assigned, transferred and conveyed the letters patent to the corporation which thereupon entered upon the manufacture and sale of such razor.

It is further set forth that upon learning that the corporation was manufacturing and selling razors under such letters patent the plaintiff informed it of his agreement with the defendant Schick and that negotiations were then had between the plaintiff and the defendants for the purchase by the corporation from the plaintiff of any and all his rights under his agreement with Schick; that the defendants then, conspiring and confederating to defraud plaintiff of his rights and to create an impression that his agreement with Schick was worth far less than in truth and fact it was, induced plaintiff to sell his rights to the corporation for an inadequate sum, fraudulently withholding and misstating to him facts concerning the true value of his rights.

Principally it is alleged that plaintiff was informed that the sole consideration for Schick's assignment to the corporation had been a nominal cash payment and an agreement to pay a royalty, which was uncertain and dependent upon the amount of business done, and that Schick had been paid only a nominal amount up to that time for his royalties; that these were false representations and that in fact Schick had received $50,000 cash and a guaranty of about the sum of $75,000 as royalties per annum, regardless of the number and amount of razors manufactured and sold, together with other valuable rights concerning privileges with respect to

the corporation's stock; that he had received about $30,000 in royalties and that otherwise the representations made to plaintiff were specifically false and untrue; that the value of plaintiff's rights was $1,500,000, of which only $22,500 has been paid under the agreement by which he assigned his one-half interest to the defendant corporation. Damages for the difference between such sums are sought.

The answer pleads the general issue and three defenses. The first is based upon plaintiff's assignment of his rights to the defendant corporation; the second pleads lack of consideration with respect to plaintiff's contract with Schick; and the third pleads the nullity of such agreement, in that it had not been recorded in the office of the Commissioner of Patents within three months from the date of execution as required by section 4898 of the United States Revised Statutes. (See 29 U. S. Stat. at Large, 693, § 5, amdg. said § 4898; since amd. by 42 id. 391, § 6; now U. S. Code, tit. 35, § 47.)

Upon the issue so joined plaintiff procured an order for the examination of the defendants on the following items:

" 1. As to the agreement entered into between defendant Jacob Schick and the other individual defendants herein, concerning the patents owned by said Schick on the magazine safety razor.

" 2. The date, nature, character and terms of any and all agreements whereby the Magazine Repeating Razor Company acquired the rights to the patents covering the magazine safety razor in accordance with which agreement and/or agreements Jacob Schick transferred his patent rights in and to the said razor to the said defendant corporation.

" 3. As to any and all payments or other considerations paid and given to Jacob Schick and/or to other persons, corporations, or in his behalf by the Magazine Repeating Razor Company as consideration for his transfer of his patent rights and the amount and extent thereof."

In the course of the examination of the defendant Wilcox, it developed that after the execution of Schick's contract with the defendants there was executed a syndicate agreement to which Schick was a party and which related to the razor patent rights. It is not necessary to outline at any great length Wilcox's testimony with respect to this agreement, which is Exhibit 2, for identification. Suffice it to say that Wilcox consistently held to his statement that there were not any agreements other than the one alleged in the complaint, whereby Schick was to share in any consideration that might be coming from the razor company by reason of the transfer of his patents.

The basis of this testimony was a distinction drawn by the

witness. While he was explicit to state that this syndicate agreement did not give Schick anything for his ownership of the patent, his conclusion was evidently predicated upon the fact that by the earlier agreement Schick had transferred his rights to the Sharp Manufacturing Corporation and that when the syndicate agreement was entered into Schick did not own any of the patent rights and so could not have received consideration therefor by the second or syndicate agreement.

The plaintiff then moved under the provisions of section 328 of the Civil Practice Act for an order directing certain of the defendants, the corporation included, to state whether the original of the syndicate agreement was, or had been, in their possession, power, custody or control, when they parted with the same, and what has become thereof. A copy only had been produced on the examination.

This motion was contested by the defendants on the ground that plaintiff had failed to show sufficient facts to move the court under the section, inasmuch as it had not been made to appear that the syndicate agreement related to the matters in issue, or much less, that it was material or competent. The Special Term denied the motion on the ground that it was merely in aid of discovery and as the plaintiff had failed to show that the document related to *the merits* of the action, no discovery could be ordered under section 324 of the Civil Practice Act; and so the motion in aid of discovery should likewise be denied.

We are of opinion that the learned justice at Special Term erred in his construction of section 328 of the Civil Practice Act. This is a new section and no case is called to our attention, nor has any been found in this jurisdiction in point upon the question here involved.

The section provides that the application shall be made upon an affidavit stating that " In the belief of the deponent the party against whom the application is made has, or has at some time had, in his possession or power the document or documents specified in the application, and that they *relate* to the matters in question in the case or matter, or to some of them." (Italics ours.)

It is to be noted that this section merely uses the word " relate," whereas section 324, which concerns discovery itself, employs the words " relating to *the merits*." On the face of the two sections, therefore, there is a most material difference. It is apparent that under section 328 the document concerning which an affidavit is sought need only relate to the matters in question in the case.

We are of opinion that in an application under section 328 of the Civil Practice Act the movant need merely establish a *prima*

*facie* case of relevancy. Questions of materiality and competency must be reserved for future proceedings.

This section has been copied almost verbatim from order 31, rule 19-a, subdivision 3, of the English Rules of the Supreme Court. (The Annual Practice, 1931, Ball, Watmough, Clark, Hills.)

An examination of the annotations in The Annual Practice and in the Laws of England (Halsbury, vol. 11, Discovery of Documents, §§ 99 *et seq.* and 1930 Supplement), discloses that whatever might be said of factual differences in the cases, this section has received a like construction in England. In *Ormerod, Grierson & Company, Limited,* v. *St. George's Ironworks, Limited* (95 L. T. 694) the court looked only to the presentation of a *prima facie* case of relevancy and refused to discuss the question of privilege at that time. In *British Association of Glass Bottle Manufacturers, Limited,* v. *Nettlefold* (L. R. [1912] App. Cas. 709), the court considered only whether the documents sought were relevant. There, as here, the objecting party had denied possession of documents that were relevant. Such denial was erroneous, having been based upon a misconception of the case.

We think the defendants here have misconceived the case as to the relevancy of the syndicate agreement. The document concerning which an affidavit is here requested is certainly, at least relevant, if not material, to the issues in question. It relates to the issue of Schick's remuneration for his patent rights, and the conspiracy alleged for it discloses a financial interest on the part of the defendants. It is likewise relevant to the issue of fraud and deceit, for it well might be that the first agreement with Schick concerning his patent rights and this syndicate agreement will, in the light of a full adducement of all facts and surrounding circumstances, be required to be read in connection with it.

The plaintiff having clearly proved the *prima facie* relevancy of the document concerning which an affidavit is sought, was entitled to an order requiring the defendants Wilcox, razor company, Walbridge and Peele, to state by affidavit whether the so-called syndicate agreement is, or has been, at any time in their possession or power, custody or control, and if not now in their possession, when they parted with the same, and what has become thereof.

It follows, therefore, that the order appealed from should be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

DOWLING, P. J., FINCH, McAVOY and MARTIN, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.